**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
DAVID MAXWELL,                              :
                                            :
                    Plaintiff,              :           23-CV-3563 (JPC) (OTW)
                                            :
          -against-                         :           **REPORT & RECOMMENDATION**
                                            :           **TO THE HON. JOHN P. CRONAN**
CITY OF NEW YORK, et al.,                   :
                                            :
                    Defendants.             :
------------------------------------------------------------x

      **ONA T. WANG**, **United States Magistrate Judge**:

      Before the Court are cross-motions for summary judgment on Plaintiff's claims under

42 U.S.C. § 1983 ("Section 1983") for false arrest, deliberate indifference to medical needs, and

malicious prosecution stemming from Plaintiff's arrest on May 4, 2021. For the reasons that

follow, I respectfully recommend that Plaintiff's motion for summary judgment be **DENIED**, and

Defendants' motion for summary judgment be **GRANTED**.

**I.      FACTUAL AND PROCEDURAL HISTORY**

      On the evening of May 4, 2021, Plaintiff David Maxwell ("Plaintiff") and his wife, Stacey

Atkinson Maxwell ("Atkinson") were inside their apartment in the Bronx when an altercation

occurred between them. (*See* Defs.' R. 56.1 Stmt., ECF 50 at ¶1; Pl's. R. 56.1 Stmt., ECF 57 at

¶1).[1] Plaintiff then called 911 to report a domestic disturbance and request medical attention,

---

[1] The paragraph numbers of the two Rule 56.1 Statement citations do not match because Plaintiff, who is *pro se*, did not match the paragraph numbers in his Rule 56.1 Statement to Defendants. Since *pro se* parties often struggle, as Plaintiff does here, to craft a compliant submission under Rule 56.1, notwithstanding Plaintiff's good faith attempts to do so, the Court will also conduct a more extensive review of the full record of this case to determine if a triable issue of fact exists. *See e.g.*, *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding district court "may in its discretion opt to conduct an assiduous review of the record"), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

alleging that Atkinson "threw oil" on him during the fight. (*See* 911 Call Recording, ECF 56 at Ex. D). Defendants New York City Police Department ("NYPD") Officer Vucetovic and NYPD Sergeant Roth (together, the "Defendant Officers") responded[2] and were admitted into Plaintiff's and Atkinson's home with their consent. (*See* Defs.' R. 56.1 Stmt., ECF 50 at ¶1).

When they first arrive, Officer Vucetovic goes into the home to speak with Atkinson while Sergeant Roth remains outside to speak with Plaintiff. Plaintiff tells Sergeant Roth that he "had a few beers with his friends" before returning to his home that night. (*See* Body-Worn Camera footage of Sergeant Roth ("Roth BWC"), ECF 49-2 at 21:28:20[3]). Plaintiff claims he could not locate a check that his mother sent him, which led to a fight with Atkinson during which she dumped "burning oil" on his arm. (*Id*. at 21:28:25; 21:28:39-21:29:23). At that point in Plaintiff's story, another non-defendant officer stops Plaintiff to ask if he "needs an ambulance or something." (*Id*. at 21:29:22). Plaintiff can then be seen pointing to his arm saying, "I need this to be checked out." (*Id*. at 21:29:23-21:29:26). After the other officer asks Plaintiff what happened to his arm, Plaintiff accuses Atkinson of "flipp[ing] out" and "throwing oil" at him during an altercation over the missing check. (*Id*. at 21:29:40-21:29:42). The non-defendant officer says, "okay I am going to get you an ambulance." (*Id*. at 21:29:48). Sergeant Roth can then be heard asking Plaintiff "how bad does [your arm] hurt?" to which Plaintiff responds "it ain't bad" [sic]. (*Id*. at 21:29:50-21:29:52).

---

[2] Additional NYPD Officers, who are not defendants in this action, also arrived and remained at the scene in addition to the Defendant Officers.

[3] The BWC footage provided to the Court does not have a timestamp imposed on it, however the date and time of the recording is superimposed on the top right-hand side of both videos. Accordingly, the Court will cite to these times throughout this Report and Recommendation rather than to the elapsed time of the video. All dates are May 4, 2021.

Inside the home, Atkinson tells Police Officer Vucetovic that Plaintiff came up behind her while she was cooking, put his hands around her neck, and pushed her into the stove, causing a boiling liquid to splash out of the pan onto both of them. (*See* Body-Worn Camera footage of Officer Vucetovic ("Vucetovic BWC"), ECF 49-1 at 21:28:16-21:30:14).

Afterward, Officer Vucetovic steps outside to speak with Sergeant Roth away from both Plaintiff and Atkinson. (Roth BWC, ECF 49-2 at 21:1:40). Plaintiff can be seen in the background of Sergeant Roth's BWC doing pull-ups using both his arms while the Defendant Officers are talking. (Roth BWC, ECF 49-2 at 21:32:16-21:32:36).

Officer Vucetovic tells Roth that he observed a burn on Atkinson and that he believes Plaintiff was the aggressor based on Atkinson's account. (Roth BWC, ECF 49-2 at 21:31:50-21:32:15; Vucetovic BWC, ECF 49-1 at 21:31:50-21:32:15). Officer Vucetovic says to Sergeant Roth that he believes there is probable cause to arrest Plaintiff for criminal obstruction of breathing based on Atkinson's statement. (Roth BWC, ECF 49-2 at 21:32:16; Vucetovic BWC, ECF 49-1 at 21:32:16). Sergeant Roth then says, "but [Plaintiff] is saying [Atkinson] poured oil on him...I thought [the aggressor] was going to be her, but you're saying it's him?" (Roth BWC, ECF 49-2 at 21:32:30-31:32:38; Vucetovic BWC, ECF 49-1 at 21:32:30-31:32:38). Sergeant Roth then goes inside to speak with Atkinson while Officer Vucetovic remains outside with Plaintiff.

As he is going inside, Sergeant Roth can be heard saying to another non-defendant officer "I thought it was going to be her." (Roth BWC, ECF 49-2 at 21:32:50-21:32:52). Atkinson tells Sergeant Roth, in substance, the same story she told Vucetovic. (*Id*. 21:32:55-21:35:45). Sergeant Roth asks Atkinson if she has any bruises, she shows him her neck, and he shines a flashlight, but it is not clear from the video if there are bruises or not. (*Id*. at 21:35:30-21:35-50).

Atkinson also denies that she lost consciousness or that Plaintiff squeezed when he placed his hands around her neck. (*Id*.). Sergeant Roth then tells Atkinson that Plaintiff "appears intoxicated" and is accusing Atkinson of "dumping oil" on him. (*Id*. at 21:36:05). Atkinson denies she did so, and Sergeant Roth can be heard saying "obviously he didn't mention he choked you." (*Id*. at 21:36:06). At this point, Sergeant Roth says to a non-defendant Officer, "okay, it is going to be a '92' on him." (*Id*. at 21:36:51).

On his way outside, Sergeant Roth informs Atkinson that "because he did choke you," Plaintiff is going to be arrested for the crime of criminal obstruction of breathing and that "it is domestic violence and something like this we have to make the arrest." (*See id*. at 21:38:21-21:38:29). Atkinson's response is not audible, but Sergeant Roth then tells her, "Something like this, we have to make the arrest, we can't leave you two alone together. We have to make the arrest…"and tells her that she should talk to the District Attorney in the morning if she doesn't want to press charges. (*Id*. at 21:38:30-21:38:52). Atkinson then clearly says "No, don't arrest him." (*Id*. at 21:38:53). Sergeant Roth tells her, "It doesn't work like that…our hands are tied, something like this we have to make the arrest." (*Id*. 21:38:54-29:39:44).

While Sergeant Roth is inside speaking with Atkinson, Defendant Emergency Medical Technician ("EMT") Carr, employed by the New York City Fire Department, arrives. (Vucetovic BWC, ECF 49-1 at 21:36:20). Plaintiff requests medical care and is evaluated by Defendant EMT Carr. (*See* Defs.' R. 56.1 Stmt., ECF 50 at ¶3; Pl's. R. 56.1 Stmt., ECF 57 at ¶8). While Defendant EMT Carr is evaluating Plaintiff, another non-defendant officer can be heard saying "we just want you to get treated." (*See* Vucetovic BWC, ECF 49-1 at 21:37:17). Plaintiff then responds, "I want to get treated." (*Id*. at 21:37:32).

When a second EMT, not a defendant in this action, comes outside, Plaintiff exclaims, "I don't want to go to the hospital, I want treatment...all you gotta [sic.] do is give me the 'ointment' and I'm good." (*Id*. at 21:38:10-21:38:17). A person off-camera can be heard asking Plaintiff, "so wait, you don't want to go to the hospital?" to which Plaintiff responds, "[n]o. I want treatment or you can leave." (*Id*. at 21:38:31-21:38:32). After Plaintiff declines transportation to the hospital, Officer Vucetovic places him under arrest for criminal obstruction of breathing in violation of New York Penal Law § 121.11. (*See* Defs.' R. 56.1 Stmt., ECF 50 at ¶9; Pl's. R. 56.1 Stmt., ECF 57 at ¶10).

Sergeant Roth then comes out of the house and tells the other officers and EMTs, "I believe her more than I believe him." (Roth BWC, ECF 49-2 at 21:39:55-21:40:00). Sergeant Roth says again a few seconds later "[Atkinson's] story makes sense" (*Id*. at 21:40:37). Sergeant Roth then tells the non-defendant EMT that he concluded Atkinson's injuries were "defensive" and that Plaintiff "choked" Atkinson. (*Id*. at 21:40:30-21:41:05). Sergeant Roth then clearly says "[Plaintiff] did place his hands around [Atkinson's] neck, that's why he is being arrested." (*Id*. at 21:41:15-21:41:20).

After Plaintiff was handcuffed, Sergeant Roth can be heard asking Plaintiff "How is your arm feeling? Your arm is good?" to which Plaintiff can be heard responding "It stings," but he does not ask to go to the hospital. (Roth BWC, ECF 49-2 at 21:41:41-21:41:42).

Following Plaintiff's arrest, Atkinson completed a domestic incident report ("DIR") which included a sworn statement generally consistent with the complaint she made to the Defendant Officers when they arrived at her home. (*See* May 4, 2021, DIR, ECF 49-3). Plaintiff was released on his own recognizance the next day. (*See* Pl's. R. 56.1 Stmt., ECF 50 at ¶11).  Plaintiff was later

charged, and subsequently acquitted of, criminal obstruction of breathing, assault in the third degree, and other lesser charges. (*See* Defs'. Opp., ECF 58 at 31).

On April 27, 2023, Plaintiff commenced this action against the Defendants alleging three causes of action under Section 1983 all stemming from his May 4, 2021, arrest: false arrest, deliberate indifference to medical needs, and malicious prosecution. (*See* Compl., ECF 1).

After mediation and discovery, the parties brought cross-motions for summary judgment on all claims, which were both fully briefed by June 23, 2025. (*See* ECF Nos. 48-52, 55-58, 60, 61). Plaintiff filed a sur-reply on July 14, 2025, (ECF 64) which Defendants moved to strike as procedurally improper. (ECF 65). In light of the special solicitude the Court extends to *pro se* parties such as Plaintiff, the Court has reviewed ECF 64 and considered it for the purposes of this motion.[4]

## II.    SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when a movant shows that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp*. v. *Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is one that would affect the action's outcome under governing law. *Sista* v. *CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). A "dispute," or "genuine issue of material fact" exists if the evidence shows that a reasonable factfinder could return a verdict for the nonmovant. *Id*. If no reasonable factfinder could return a verdict for the nonmovant, because the evidence to

---

[4] While *pro se* parties are not exempt "from compliance with relevant rules of procedural and substantive law," *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981), they "should not be impaired by harsh application of technical rules." *Holmes v. Goldin*, 615 F.2d 83, 85 (2d Cir. 1980). Rather, the court should evaluate *pro se* filings "by a more lenient standard than that accorded to formal pleadings drafted by lawyers." *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (internal quotation omitted).

support his case is so slight, then there is no genuine issue of material fact, and a court may properly grant summary judgment. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

When deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the party opposing summary judgment and draws all reasonable inferences in favor of that party. *Amnesty Am*. v. *Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). The Court avoids making credibility assessments. *Id*. However, some assessment of a plaintiff's assertions is required where, as here, plaintiff's motion relies primarily on his own sworn statements. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotations omitted) ("the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, [making it] impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account.")

When the nonmovant bears the burden of proof on a disputed claim, the movant may "satisfy their burden by pleading facts that indicate an 'absence' of evidence supporting an 'essential element' of the nonmovant's case." *Crawford* v. *Franklin Credit Mgmt*., 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady* v. *Town of Colchester*, 863 F.2d 205, 210–11 (2d Cir. 1988)). If the moving party meets their burden, the burden then shifts to the nonmovant to provide persuasive evidence showing their claim is not implausible. *Id*.

If the movant satisfies that burden, the opposing party must establish a genuine issue of fact by citing materials from the record to survive the motion. *See* Fed. R. Civ. P. 56(c)(1)(A). The existence of a mere "scintilla of evidence" in support of the nonmovant's position cannot

7

defeat the motion (*Fabrikant* v. *French*, 691 F.3d 193, 205 (2d Cir. 2012)); the nonmovant must create more than an abstract, "metaphysical doubt," as to the material facts in the case. *Aslanidis* v. *U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Neither conclusory statements devoid of specifics (*see Ridinger* v. *Dow Jones & Co*. Inc., 651 F.3d 309, 317 (2d Cir. 2011)), or a nonmovant's self-serving statement that lacks supporting direct or circumstantial evidence (*Fincher v. Depository Tr. & Clearing Corp.*, No. 06-CV-9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008), can defeat a properly supported motion for summary judgment.

"The same standard[s] appl[y] where, as here, the parties filed cross-motions for summary judgment[.]" *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id.* (internal citations omitted); *accord Mindspirit, LLC v. Evalueserve Ltd.*, No. 15-CV-6065 (PGG), 2018 WL 4759736, at *13 (S.D.N.Y. Sept. 30, 2018).

Courts may consider body-worn camera footage at summary judgment, as "reliable objective evidence" upon which the Court may rely and which "may speak for itself." *Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012). To the extent that factual information is clearly confirmed by video footage, the Court will consider such facts undisputed. *Delgado v. City of New York*, No. 19-CV-6320 (JHR), 2023 WL 6390134 at *n.1 (S.D.N.Y. 2023) (citing *Sherrard v. City of New York*, No. 14-CV-9321 (NRB), 2016 WL 7489069, at *1 n.1

(S.D.N.Y. 2016)).  The parties here refer freely to the Defendant Officers' BWC videos in their competing Rule 56.1 statements. (*See generally* ECF Nos. 50, 57). The authenticity of the videos is undisputed, and their review is permissible at summary judgment.  *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

## III.   CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.  Count One: False Arrest

#### i.  *Legal standard*

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). "[T]he existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). Even if actual probable cause did not exist, the Defendants may still be entitled to qualified immunity which, as relevant here, "protects an officer [from civil liability] if he had *arguable* probable cause to arrest the plaintiff." *Myers v. Patterson,* 819 F.3d 625, 632 (2d Cir. 2016) (quotations omitted) (emphasis added).

Therefore, regardless of whether or not there was actual probable cause to arrest the person, "under both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable. If, however, on the undisputed facts the officer would be unreasonable in concluding probable cause existed, or if the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate for

9

both New York and federal false arrest claims." *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007).

>    iii.   *Defendant Officers Had Actual Probable Cause to Arrest Plaintiff*

"Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368-69 (2d Cir. 2007) (citations omitted). The existence of probable cause depends on the facts known to the arresting officer at the time of the arrest, and the officer's state of mind is irrelevant. *Id.* at 369. "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852. A court assessing probable cause must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks omitted).

Accordingly, Defendants prevail on their motion if there was probable cause to arrest Plaintiff for any single offense, *see Jaegly*, 439 F.3d at 154 (2d Cir. 2006) ("[W]hen faced with a claim for false arrest, we focus on the validity of the *arrest*, and not on the validity of each charge"), based on the totality of circumstances available to a reasonable officer. *See, e.g.*, *District of Columbia v. Westby*, 583 U.S. 48, 57 (2018).

Here, it is undisputed (and captured on the BWC footage) that Atkinson told the Defendant Officers, separately, that Plaintiff placed his hands around her neck. (*See* Vucetovic

BWC, ECF 49-1 at 21:28:16-21:30:14); Roth BWC, ECF 49-2 at 21:32:55-21:35:45). In New York, a person is guilty of criminal obstruction of breathing when they "appl[y] pressure on the throat or neck of [another] person." N.Y. Penal Law § 121.11 (McKinney).

Sergeant Roth clearly tells the non-defendant EMT that Plaintiff is being arrested for criminal obstruction of breathing because Plaintiff "placed his hands around [Atkinson's] neck." (Roth BWC, ECF 49-2 at 21:41:15-21:41:20). Officer Vucetovic is also clearly heard on the BWC footage telling Sergeant Roth, before arresting Plaintiff, that he believed Plaintiff choked Atkinson and that Plaintiff was the aggressor in their domestic dispute. (*See* Roth BWC, ECF 49-2 at 21:31:50-21:32:15; Vucetovic BWC, ECF 49-1 at 21:31:50-21:32:15).

Accordingly, the Defendant Officers had probable cause to arrest Plaintiff for the crime of criminal obstruction of breathing based on Atkinson's statement that Plaintiff placed his hands around her neck. *See Ortiz v. City of New York*, 773 F. App'x 54, 55-56 (2d Cir. 2019) ("a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity."

Plaintiff argues that the Defendant Officers were wrong to believe Atkinson over Plaintiff's claim that he was the victim in the dispute, or that the Defendant Officers should have arrested Atkinson *instead* of him, but this argument does not defeat summary judgment for Defendants. The success of Plaintiff's false arrest claim turns only on whether the Defendant Officers had probable cause to arrest Plaintiff, and not whether they had probable cause to arrest Atkinson. The Second Circuit has considered such arguments several times and found them uncompelling. *See e.g. Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (finding

11

probable cause where a police officer was presented with different stories from an alleged victim and the arrestee); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 124 (2d Cir. 1997) ("[o]nce a police officer has a reasonable basis for believing there is probable cause, [they] are not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.")

Plaintiff specifically cites two statements by Sergeant Roth where Roth says, in substance, that he thought the aggressor would be or should be Atkinson. (*See* Vucetovic BWC, ECF 49-1 at 21:32:30-31:32:38; Roth BWC, ECF 49-2 at 21:32:50-21:32:52). However, Sergeant Roth made both of those statements *before* speaking with Atkinson. After speaking with Atkinson, Sergeant Roth clearly says that he believes Atkinson's story and affirmatively instructs another officer to tell Officer Vucetovic to arrest Plaintiff. (*See* Roth BWC, ECF 49-2 at 21:36:51).

It is undisputed that Atkinson told the Defendant Officers that Plaintiff put his hands on her neck and that when the Defendant Officers arrested Plaintiff, they did so for criminal obstruction of breathing. Based on these undisputed facts, the Defendant Officers had actual probable cause to arrest Plaintiff. (s*ee Devenpeck v. Alford*, 543 U.S. 146, 153-56 (2004).

### ii. *Defendants Are Also Entitled to Qualified Immunity*

Even if a genuine issue of material fact precludes a finding of actual probable cause to arrest Plaintiff, the Defendant Officers are still entitled to qualified immunity. "Summary judgment on the basis of qualified immunity is appropriate when the only conclusion a rational jury could reach is that reasonably competent police officers could not under the circumstances disagree about the legality of the arrest." *Lennon v. Miller,* 66 F.3d 416, 421 (2d Cir.1995).

12

Defendants moving for summary judgment on qualified immunity grounds must show that "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997).

New York Law of Criminal Procedure §140.10(4) *requires* a police officer to arrest a person if they have probable cause to believe that person committed the offense of, *inter alia*, criminal obstruction of breathing against an intimate partner. *See* N.Y. Crim. Proc. Law §140.10 (McKinney) 140.10(4)(c) ("a police officer shall arrest a person, and shall not attempt to reconcile the parties or mediate, where such officer has reasonable cause to believe that...[a person committed] a misdemeanor constituting a[n enumerated] family offense[5]...").

Here, it is undisputed that the Defendant Officers heard Atkinson tell them that Plaintiff placed his hands on her neck, (*see e.g* Vucetovic BWC, ECF 49-1, at 21:28:16-21:30:14; Roth BWC, ECF 49-2 at 21:32:55-21:35:45 ) and that they determined, based on that statement, that Plaintiff committed the crime of criminal obstruction of breathing. (*See* Vucetovic BWC, ECF 49-1 at 21:32:16; Roth BWC, ECF 49-2 at 21:36:51). It is also undisputed that Atkinson and Plaintiff are intimate partners and on multiple occasions that night, they each told the Defendant Officers that they were married and have been for several years. (*See generally,* Vucetovic BWC, ECF 49-1; Roth BWC, ECF 49-2). It is also undisputed that Officer Vucetovic tells Atkinson that he is required by the law to arrest the aggressor, in this case Plaintiff, any time there is

---

[5] The long list of qualifying offenses includes, *inter alia*, criminal obstruction of breathing.  N.Y. Crim. Proc. Law § 530.11(1) (McKinney).

domestic violence, even after Atkinson asks him not to arrest Plaintiff. (*See* Roth BWC, ECF 49-2 at 21:38:30-29:39:44).

Therefore, it was objectively reasonable for the Defendant Officers to believe New York Law required them to arrest Plaintiff. *See e.g. Lee*, 136 F.3d 94 (holding even in the absence of actual probable cause, Connecticut State Troopers had *arguable* probable cause to make an arrest based on a victim complaint due to a Connecticut law that mandates arrests for crimes of domestic violence.)

Accordingly, Defendants have carried their burden to establish that probable cause existed at the time of Plaintiff's arrest, or, in the alternative, the Defendant Officers are entitled to qualified immunity. Therefore, Defendants are entitled to summary judgment on Plaintiff's false arrest claim. Conversely, because Defendants have carried their burden to establish probable cause, Plaintiff is not entitled to summary judgment because he cannot meet his burden to show a <u>lack</u> of probable cause.

### B. <u>Count Two: Deliberate Indifference to Medical Needs</u>

#### i. *Legal standard*

The Fourteenth Amendment provides the framework to evaluate a deliberate indifference claim under Section 1983 for pre-trial detainees. "Pretrial detainees may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (quotations omitted). The same standard is applicable with respect to medical treatment. *See Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019) ("those in civil

14

detention... are also afforded a right to be free from deliberate indifference to their serious medical needs").

"The Due Process Clause [of the Fourteenth Amendment] ... require[s] the responsible government or governmental agency to provide medical care to persons ... who have been injured while being apprehended by the police." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (cleaned up). Accordingly, an arrestee who is sick or injured when arrested must be "taken promptly to a hospital that provided the treatment necessary for his injury." *Id.* at 245. A plaintiff's claims for deliberate indifference to a serious medical need are governed by the same standard as a pretrial detainee when their claim arises from their arrest, as Plaintiff's claim does here. *See Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 394-95 (S.D.N.Y. 2020).

"For a constitutional violation to occur based on deliberate indifference to a prisoner's medical need, the deprivation of medical care must be sufficiently serious in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain..." *Yancey v. Robertson*, 828 F. App'x 801, 803 (2d Cir. 2020) (quotations omitted) (collecting cases). "In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm." *Charles*, 925 F.3d at 86 (citing *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003)).

  *ii.  Discussion*

Here, it is undisputed that Plaintiff requests treatment multiple times and is evaluated by an EMT. (*See* Defs.' R. 56.1 Stmt., ECF 50 at ¶3; Pl's. R. 56.1 Stmt., ECF 57 at ¶8). However,

15

when Plaintiff is offered transportation in the ambulance to the hospital for treatment (on at least two separate occasions) he declines. (*See e.g.,* Vucetovic BWC, ECF 49-1 at 21:38:10-21:38:17; 21:38:31-21:38:32). The only medical treatment Plaintiff requests is "ointment."[6] (*See* Def. R. 61 Stmt., ECF 50 at ¶¶ 4-8; Pl's. Dep. Tr., ECF 49-4 at 8).

Indeed, many undisputed facts are explicitly contrary to such a finding of seriousness. First, Plaintiff tells a non-defendant officer that his arm "ain't that bad [sic.]." (Roth BWC, ECF 49-2 at 21:29:50-21:29:52). Plaintiff also can be seen doing pull ups using his burned arm. (Roth BWC, ECF 49-2 at 21:32:16-21:32:36). Additionally, after Plaintiff was released on his own recognizance the next day, he did not seek any medical treatment for the burns on his arm. (*See* Pl's. Dep. Tr., ECF 49-4 at 6). None of these facts suggest "death, degeneration, or extreme pain." *Yancey*, 828 F. App'x at 803.

Moreover, Plaintiff does not substantiate his conclusory statements about the long-term severity of his burn (*see* e.g. Pl's. R. 56.1 Stmt., ECF 57 at ¶8 ("obvious second-degree burn")) with any external or circumstantial evidence and has provided no medical documentation whatsoever beyond an unauthenticated photo purportedly of his arm. (*See* Decl. of David Maxwell, ECF 56 at 7). This failure to show "actual medical consequences" from the alleged deliberate indifference is fatal to Plaintiff's claim. *Charles*, 925 F.3d at 86. ("the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm").

---

[6] Plaintiff is never more specific about the "ointment" he is requesting. During his deposition, he described it as "I know there's a cream you can put on to stop the burn and [the Defendant EMT] asked -- there was something else he asked me. What is that on your arm. And I told him that my family was from the south, and I put butter on it.... it's an old southern remedy for oil burns." (Pl's. Dep. Tr., ECF 49-4 at 4).

Even if Plaintiff did experience some "stinging" or other discomfort from his burn, no reasonable fact finder could conclude that the discomfort was severe enough to meet the objective test of a Fourteenth Amendment violation. *See Yancey,* 828 F. App'x 801 (holding that even if plaintiff suffered an allergic reaction which caused "*some* respiratory distress", no reasonable jury could find that his symptoms were sufficiently serious to make denial of immediate medical care a constitutional violation) (emphasis in original).

Further still, assuming, *arguendo*, that Plaintiff's burn was serious and that the Defendants knew about the seriousness of Plaintiff's burn when he was arrested, Plaintiff refused to go to the hospital multiple times. Sergeant Roth even explicitly asks Plaintiff how his arm feels after he is handcuffed, and Plaintiff does not request medical treatment. (Roth BWC, ECF 49-2 at 21:41:41-21:41:42).

Based on the foregoing, there is no evidence from which a reasonable juror could find Defendants ignored Plaintiff's burn because they provided Plaintiff with medical care, to the extent they could, at every opportunity to do so, and offered him transportation to the hospital, which Plaintiff refused. Furthermore, Plaintiff has offered no circumstantial or actual evidence that his burn was serious enough that if the Defendants had ignored it, doing so would constitute a constitutional violation. Accordingly, Defendants are entitled to summary judgment on Plaintiff's deliberate indifference claim.

### C. Count Three: Malicious Prosecution

#### i. *Legal standard*

In order to prevail on a malicious prosecution claim under Section 1983, a plaintiff is required to demonstrate: (i) the commencement or continuation of a criminal proceeding

against them; (ii) the termination of the proceeding in their favor; (iii) "that there was no probable cause for the proceeding"; and (iv) "that the proceeding was instituted with malice." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003) (citations omitted). Additionally, "the existence of probable cause is a complete defense to a claim of malicious prosecution." *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010); *see also McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006) ("[t]he absence of probable cause is an essential element of a claim for malicious prosecution.") (citing *Colon v. City of New York,* 455 N.E.2d 1248 (N.Y.1983)).

    ii.  *Discussion*

As a threshold matter, the Court need not even reach this question because "[p]robable cause is an absolute defense to false arrest *and* defeats a claim for malicious prosecution." *Tartaglione v. Pugliese*, 89 F. App'x 304, 305 (2d Cir. 2004) (internal citations omitted, emphasis added).

Reading Plaintiff's claims in the strongest possible light, they rest entirely on the assertion that his acquittal of all charges equates to a lack of probable cause. (*See, generally*, Pl's. Rule 56.1 Stmt., ECF 50). However, "[a]n acquittal after trial established the absence of proof beyond a reasonable doubt, not the absence of probable cause." *Saunders v. Cavada*, No. 19-CV-3279, 2024 WL 681228, at *8 (E.D.N.Y. Feb. 20, 2024) (citing *Tartaglione*, 89 Fed.Appx. 304).

Since probable cause defeats a malicious prosecution claim, Plaintiff can only survive summary judgment by raising a genuine issue of material fact that could show that "probable cause somehow 'dissipated' between the time of arrest and the commencement of the

prosecution." *Barua v. City of New York*, No. 14-CV-0584 (NRB), 2016 WL 7494875, at \*10 (S.D.N.Y. Dec. 29, 2016). (internal quotations and citations omitted). "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Id*. Plaintiff does not present any such intervening facts here.

Nevertheless, Plaintiff's claim also fails because, while it is undisputed that Plaintiff's acquittal is a termination of criminal proceedings in his favor which satisfies the second element, he does not offer any evidence to support the first or fourth required elements.

Plaintiff's claim fails on the first element because no Defendant initiated the criminal charges against Plaintiff. *See Saunders-Hall v. Sullivan*, No. 17-CV-1269 (PAC), 2018 WL 3038492, at \*4 (S.D.N.Y. June 19, 2018) (citations omitted) ("[t]here is a presumption that police officers do not initiate criminal proceedings because prosecutors use their independent judgment in making such decisions.") Unless "an officer mislead[s] prosecutors or continu[es] to be involved in the criminal prosecution following the plaintiff's arrest..." the prosecutor breaks the "link between the officer and the prosecution" by filing charges "and the officer may not be held liable for malicious prosecution." *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999).

In *Saunders-Hall*, the sole complaining witness signed the complaint, and Plaintiff offered no evidence to rebut the presumption the District Attorney acted independently in bringing charges against the plaintiff based on that complaint. *See Saunders-Hall*, 2018 WL 3038492, at \*4. The same facts are undisputed here: Atkinson signed the criminal complaint stating that Plaintiff choked her and shoved her into the stove, causing boiling oil to spill and

burn her, and neither Defendant Officer signed the complaint. (*See* Defs'. R. 56.1 Stmt., ECF 57 at ¶¶ 16-20).

And finally, Plaintiff presents no evidence which could show actual malice. "Under New York law, malice does not have to be actual spite or hatred but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg,* 377 N.E.2d 975, 976 (N.Y. 1978). Plaintiff alleges his acquittal *ipso facto* establishes the criminal charges against him were "fabricated." (*See* Pl's. R. 56.1 Stmt., ECF 57 at ¶12). Notwithstanding that, as discussed *supra*, no Defendant actually initiated criminal charges against Plaintiff, Plaintiff does not even allege which Defendant he believes acted to "fabricate" the criminal charges against him, much less suggests how they did so, and particularly in light of Atkinson's statements to the Defendant Officers on their BWC videos.

Plaintiff's malicious prosecution claim also fails as a matter of law because the Defendant Officers had probable cause to arrest him and he cannot show probable cause dissipated before criminal charges were brought. Even if that were not fatal to his claim, Plaintiff does not allege which Defendants "fabricated" criminal charges against him, nor can he, because no Defendant initiated the charges in the first place. Plaintiff does not even raise a "metaphysical doubt" that the District Attorney acted with anything other than the "intent to see justice served." *Nardelli* 377 N.E.2d at 976. Accordingly, Defendants are entitled to summary judgment on the malicious prosecution claim

IV.    CONCLUSION

Plaintiff is not entitled to summary judgment on any of his claims because he has not shown with undisputed facts that each of the elements of false arrest, deliberate indifference, or malicious prosecution, respectively, are satisfied. Conversely, Defendants have carried their burden to show that the evidence, even viewed in a light most favorable to Plaintiff, is so slight that no reasonable juror could find in favor of Plaintiff on any of his claims.

With respect to Plaintiff's false arrest claim, Defendants have shown there can be no genuine dispute that the Defendant Officers had probable cause to arrest Plaintiff after Atkinson told them that he put her hands around her neck. Even if they did not have actual probable cause, no reasonable police officers could disagree on whether or not the Defendant Officers acted lawfully in believing New York law required them to arrest Plaintiff. Because either probable cause or arguable probable cause (qualified immunity) are affirmative defenses supported by evidence on the Defendant Officers' BWC videos, Plaintiff cannot meet his burden to show a lack of probable cause. Accordingly, Defendants are entitled to summary judgment on the false arrest claim.

Plaintiff is not entitled to summary judgment on his deliberate indifference claim because he has not established with undisputed facts that there is any dispute that Defendants ever ignored his requests for medical treatment of his burn. Even if they had, Defendant has also failed to show with undisputed facts that his burn was serious enough that ignoring it would violate his constitutional rights. Conversely, Defendants have shown that the evidence is so slight, Plaintiff could not possibly prevail on his claim at trial. Accordingly, Defendants are entitled to summary judgment on the deliberate indifference claim.

Finally, Plaintiff is not entitled to summary judgment on his malicious prosecution claim because, as a matter of law, the existence of probable cause also defeats a malicious prosecution claim. Even if that were not so, no Defendant initiated the criminal charges against Plaintiff. The only evidence Plaintiff shows in support of that claim, his acquittal, only satisfies one of the four elements required to prevail. An acquittal does not also establish that the criminal charges were "fabricated" with malice or a lack of probable cause. For the same reason, Defendants have already established the affirmative defense of probable cause which also entitles them to summary judgment on the malicious prosecution claim.

For the foregoing reasons, I respectfully recommend that Defendants' motion for summary judgment be **GRANTED** in its entirety.

## V.    OBJECTIONS

In accordance with 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* FED. R. CIV. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable John P. Cronan, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Cronan.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.

1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Defendants are directed to serve a copy of this Report and Recommendation on *pro se*

Plaintiff by First Class Mail at his last known address and to file proof of such service on the

docket by February 23, 2026.

**Respectfully submitted,**


/s/  *Ona T. Wang*

Dated: February 19, 2026                    **Ona T. Wang**
      New York, New York                    United States Magistrate Judge

23