UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                    :
DAVID MAXWELL,                                                      :
                                                                    :
                              Plaintiff,                            :
                                                                    :
            -v-                                                     :        23 Civ. 3563 (JPC) (OTW)
                                                                    :
CITY OF NEW YORK, *et al*.,                                         :        OPINION AND ORDER
                                                                    :        ADOPTING REPORT AND
                              Defendants.                           :        RECOMMENDATION
                                                                    :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiff David Maxwell, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 for

false arrest, deliberate indifference to his medical needs, and malicious prosecution stemming from

his arrest on May 4, 2021.  On May 2, 2025, Defendants New York City Police Department

("NYPD") Sergeant Howard Roth, NYPD Officer Fatmir Vucetovik (with Sergeant Roth, the

"Officer Defendants"), New York City Fire Department ("FDNY") Emergency Medical Services

technician Gerald Carr, and the City of New York moved for summary judgment on Plaintiff's

claims.  One month later, Plaintiff also moved for summary judgment.  On February 19, 2026, the

Honorable Ona T. Wang, to whom this case has been referred for general supervision of pretrial

proceedings and to issue a Report and Recommendation on dispositive motions, recommended

that the undersigned grant summary judgment in Defendants' favor and deny Plaintiff's motion.

Dkt. 73 ("R&R") at 21-22.

Plaintiff timely objected to the Report and Recommendation on March 5, 2026.  For the

reasons below, this Court overrules Plaintiff's objections and adopts the Report and

Recommendation in full.  Defendants' motion for summary judgment therefore is granted, and Plaintiff's motion is denied.

## I.  Background

### A.    Facts[1]

On May 4, 2021, Sergeant Roth, Officer Vucetovik, other non-defendant NYPD officers, Carr, and a non-defendant FDNY medic responded to a 911 call reporting an altercation between Plaintiff and his wife, Stacey Atkinson Maxwell ("Atkinson"), and seeking medical help.  Defts. 56.1 Stmt. ¶¶ 1, 3; Pl. 56.1 Stmt. ¶ 6; *see* Maxwell Decl., Exh. D ("911 Call Recording").  Upon arrival, Officer Vucetovik and a non-defendant officer entered the residence to speak to Atkinson while Sergeant Roth and another non-defendant officer remained outside with Plaintiff.  Vucetovik BWC at 21:28:13[2]; Roth BWC at 21:28:13.

Plaintiff told Sergeant Roth that after returning home from having "a few beers," Roth BWC at 21:28:18-19, he argued with Atkinson over a missing check and, during that argument, Atkinson "flipped out," *id.* at 21:29:41, and "threw hot oil" on his arm, *id.* at 21:28:24-21:29:20, 21:31:35-21:31:36.  As Plaintiff was describing his argument with Atkinson, a non-defendant

---

[1] The following facts are drawn primarily from the parties' statements of undisputed material facts under Local Civil Rule 56.1(a), Dkt. 50 ("Defts. 56.1 Stmt."); Dkt. 57 ("Pl. 56.1 Stmt."), and the declarations filed by the parties with attached exhibits, Dkt. 49 ("Forcier Decl."); Dkt. 56 ("Maxwell Decl.").  Unless otherwise noted, the Court cites only to a party's statement of undisputed material facts when the opposing party does not dispute the fact, has not offered admissible evidence to refute it, or simply seeks to add its own "spin" on the fact or otherwise disputes the inferences drawn from it.  Among the exhibits filed by the parties are excerpts from body-worn camera ("BWC") footage for Officer Vucetovik, *see* Forcier Decl., Exh. A ("Vucetovik BWC"), and for Sergeant Roth, *see* Forcier Decl., Exh. B ("Roth BWC").  The Court regards footage from BWCs as "'reliable objective evidence' upon which the Court can rely and which 'may speak for itself.'"  *Delgado v. City of New York*, No. 19 Civ. 6320 (JHR), 2023 WL 6390134, at *1 n.1 (S.D.N.Y. Oct. 2, 2023) (quoting *Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012)).  The Court therefore considers facts that are clearly confirmed by that footage.

[2] The Court cites to the times of the BWC recordings located at the top right of each video.

2

officer asked, "do you need an ambulance for anything?" *Id.* at 21:29:21-22.  Plaintiff pointed at

his arm and responded, "I need this to be treated." *Id.* at 21:29:23-21:29:25.  Sergeant Roth then

asked Plaintiff, "how bad does [the arm] hurt?", to which Plaintiff answered, "it ain't bad," and

explained that he did not want it to scab. *Id.* at 21:29:48-21:29:56.

Inside, Officer Vucetovik heard a different description of the dispute from Atkinson.

According to her, the argument began in the living room, where Plaintiff choked her from the front.

Vucetovik BWC at 21:29:11-21:29:15.  They kept arguing as she moved into the kitchen, where a

pot was already on the stove. *Id.* at 21:29:32-21:29:37.  She resumed cooking, but then Plaintiff

came up behind her, put his hands around her neck, and pushed her into the stove, causing hot oil

to splatter onto both of them. *Id.* at 21:29:46-21:29:58.  She demonstrated on herself how Plaintiff

placed his hands on her neck. *Id.* at 21:29:14-21:29:16, 21:29:53-21:29:54.

Sergeant Roth and Officer Vucetovik then conferred with each other and realized they had

received different information about who was the aggressor. *Id.* at 21:32:31-21:32:33.  Officer

Vucetovik told Sergeant Roth that he credited Atkinson's account, that he saw a burn on her, and

that she was accusing Plaintiff of criminal obstruction of breathing. *Id.* at 21:31:43-21:32:17.

Sergeant Roth recounted that Plaintiff told him that Atkinson poured oil on Plaintiff, and indicated

that, based on that account, he initially thought that Atkinson was at fault. *Id.* at 21:32:20-

21:32:23; 21:32:31-21:32:32.  As Sergeant Roth and Officer Vucetovik conferred, Plaintiff can be

seen in the background doing pull-ups against the side of the house using both his arms.  Roth

BWC at 21:32:20-21:32:33.

Sergeant Roth and Officer Vucetovik then switched, with Sergeant Roth going inside to

speak with Atkinson and Officer Vucetovik remaining outside to speak to Plaintiff. *Id.* at

21:32:36-21:32:48.  Plaintiff told Officer Vucetovik, in substance, the same story he had told

Sergeant Roth, Vucetovik BWC at 21:32:46-21:35:11, though he added that Atkinson sustained oil burns on her own arm because she had picked up the pan with the oil and swung it at him, *id.* at 21:34:58-21:35:11.  Meanwhile, Atkinson told Sergeant Roth, in substance, the same story that she had told Officer Vucetovik.  Roth BWC at 21:33:12-21:35:42.  Sergeant Roth checked Atkinson's neck for bruises, *id.* at 21:35:43-21:35:48, and later told a medic that Atkinson did not have any injuries to her neck, *id.* at 21:41:05-21:41:07.  Atkinson stated that she did not lose consciousness or get dizzy, and said Plaintiff "never really squeezed" when he put his hands around her neck.  *Id.* at 21:35:32-21:35:33, 21:35:49-21:35:52.

After speaking to Atkinson, Sergeant Roth told some of the non-defendant officers that they would be arresting Plaintiff because Atkinson's story "is making sense."  *Id.* at 21:37:06-21:37:12.  Sergeant Roth similarly informed Atkinson that Plaintiff was being placed under arrest, but advised that if she did not want to press charges, she should talk to the District Attorney's office in the morning.  *Id.* at 21:38:18-21:38:51.  Moments later, Sergeant Roth told non-defendant officers and a medic that he "believe[s] her more than [he] believe[s] him," *id.* at 21:39:55-21:39:57, and commented to one of the officers, "her story makes sense," *id.* at 21:40:30-21:40:35.  Sergeant Roth then told the medics that Plaintiff was being arrested for choking Atkinson because he "did place his hands around her neck."  *Id.* at 21:41:12-21:41:19.

While Sergeant Roth and Atkinson were inside the house, Carr and a second FDNY medic arrived and began examining Plaintiff.  Vucetovik BWC at 21:36:13.  As they evaluated Plaintiff, a non-defendant police officer said to Plaintiff, "we just want to make sure you to get treated," and Plaintiff shortly thereafter said, "I want to get treated."  *Id.* at 21:37:13-21:37:15; 21:37:29-21:37:31.  Less than a minute later, Plaintiff told the first responders, "I don't want to go to the hospital, I want treatment. . . .  All you gotta give me is the ointment and I'm good."  *Id.* at

4

21:38:12-21:38:17.  An officer then asked Plaintiff, "so you don't want to go to the hospital?", to which Plaintiff responded, "no, I want treatment or you can leave." *Id.* at 21:38:28-21:38:32. Officer Vucetovik then arrested Plaintiff for criminal obstruction of breathing in violation of New York Penal Law Section 121.11.  Deft. 56.1 Counter Stmt. ¶ 10.

As Plaintiff was being placed under arrest, a medic remarked to Sergeant Roth that Plaintiff was "not burnt too badly" and that he had only first-degree burns.  Roth BWC at 21:40:12-21:40:16.  After Plaintiff was in handcuffs, Sergeant Roth asked Plaintiff how his arm was feeling, and Plaintiff responded, "it stings," but said it is fine. *Id.* at 21:41:40-21:41:43.

Later that evening, Atkinson signed a domestic incident report in which she described how the events unfolded. *See* Forcier Decl., Exh. C at 2.  The next day, Plaintiff was charged by a criminal complaint filed in the Bronx County Criminal Court, in the case captioned *The People of the State of New York v. David Maxwell M/52*, with criminal obstruction of breathing, assault in the third degree, and harassment in the second degree (the "Criminal Action").  Defts. 56.1 Stmt. ¶¶ 15-16; Forcier Decl., Exh. F ("Criminal Complaint").  Atkinson was the deponent who signed the Criminal Complaint. *See* Defts. 56.1 Stmt. ¶ 16; Criminal Complaint at 2.  In May 2022, a jury acquitted Plaintiff of all charges.  Dkt. 58 ("Pl. Opp. to Defts. SJ Motion"), Exh. F at 107-08.

## B.    Procedural History

Plaintiff brought this action on April 27, 2023.  Dkt. 1.  He then filed the Amended Complaint on July 18, 2023, stating that "[t]his cause of action is defined by the Fourteenth Amendment."  Dkt. 10 ("Am. Compl.") at 2.  Like Judge Wang, the undersigned construes the allegations in the Amended Complaint as pleading three causes of action under 42 U.S.C. § 1983: false arrest, deliberate indifference to medical needs, and malicious prosecution. *Id.* at 5-6; *see*

R&R at 1.[3]  Following mediation and discovery, on May 2, 2025, Defendants moved for summary judgment on all claims.  Dkts. 48-52.  On June 2, 2025, Plaintiff also moved for summary judgment, Dkts. 54-57, and filed his brief in opposition of Defendants' motion, Dkt. 58. Defendants replied in support of their motion on June 23, 2025.  Dkt. 60.  Plaintiff filed a reply in support of his motion on July 14, 2025.  Dkt. 64.

On February 19, 2026, Judge Wang issued the Report and Recommendation, which advised the undersigned to grant Defendants' motion for summary judgment and deny Plaintiff's motion. R&R at 21-22.  Plaintiff objected on March 5, 2026.  Dkt. 77 ("Objections").  Defendants responded to Plaintiff's Objections on March 20, 2026.  Dkt. 79.

## II.  Legal Standard

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a report and recommendation.  28 U.S.C. § 636(b)(1)(C).  Within fourteen days after a party has been served with a copy of a magistrate judge's report and recommendation, the party "may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  If a party submits a timely and otherwise proper objection to any part of the magistrate judge's disposition, the district court will conduct a *de novo* review of the contested section.  Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juv.*, 121 F.3d 34, 38 (2d Cir. 1997).  The district court reviews those portions of a report and recommendation to which an improper objection was filed only for clear error.  *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).  "The objections of *pro se* parties are 'generally accorded leniency and should be construed to raise the strongest arguments that they suggest.'"

---

[3] Though the Amended Complaint does not specify these claims, the parties appear in agreement that they are the causes of action.  *See* Dkt. 51 ("Defts. SJ Motion") at 1; Pl. Opp. to Defts. SJ Motion at 2-5.

*Machicote v. Ercole*, No. 06 Civ. 13320 (DAB) (JCF), 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) (quoting *Howell v. Port Chester Police Station*, No. 09 Civ. 1651 (CS) (LMS), 2010 WL 930981, at *1 (S.D.N.Y. Mar. 15, 2010)).

### III.  Discussion

In light of Plaintiff's timely objections and his *pro se* status, the Court reviews the Report and Recommendation *de novo*.  The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'"  *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 620 (2d Cir. 2016) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In conducting this review, the Court "resolve[s] all ambiguities and draw[s] all reasonable inferences in favor of the nonmoving party."  *Mhany Mgmt.*, 819 F.3d at 620.

"The movant bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,' and, if satisfied, the burden then shifts to the non-movant to present 'evidence sufficient to satisfy every element of the claim.'"  *Chen*, 2019 WL 1244291, at *4 (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)).  The non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence showing that its version of the events is not wholly fanciful."  *Jeffreys v. City of New York*, 426

F.3d 549, 554 (2d Cir. 2005) (citation modified). The non-movant must present more than a "scintilla of evidence" to survive summary judgment. *Anderson*, 477 U.S. at 252. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

Generally, when parties cross-move for summary judgment, a court evaluates each motion independently of the other, considering the facts in the light most favorable to the non-moving party. *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). But if a "motion and cross-motion seek a determination of the same issues," as is the case here, "the Court may consider them together." *ExteNet Sys., Inc. v. Vill. of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019).

**A.     The False Arrest Claim**

In the Report and Recommendation, Judge Wang recommended granting summary judgment in Defendants' favor as to the false arrest claim because the undisputed facts show that the Officer Defendants had actual probable cause to arrest Plaintiff, and, alternatively, that the Officer Defendants had at least arguable probable cause and are thus entitled to qualified immunity. R&R at 10-14. Plaintiff objects on the ground that, in his view, there was no probable cause. Objections at 1-2. Granting "special solicitude" to Plaintiff given his *pro se* status, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citation modified), the Court construes this objection to apply to both of Judge Wang's grounds for recommending summary judgment in favor of Defendants on the false arrest claim. The Court overrules the

objection, grants Defendants' motion for summary judgment on the false arrest claim, and denies Plaintiff's motion on that claim.

"A § 1983 claim for false arrest[] rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Courts analyze Section 1983 claims for false arrest under "the law of the state in which the arrest occurred." *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). A plaintiff alleging false arrest under New York law must plead facts that show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (citation modified).

The existence of probable cause to arrest "is a complete defense to an action for false arrest." *Weyant*, 101 F.3d at 852 (citation modified); *accord Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) ("Under New York law, the existence of probable cause is an absolute defense to a false arrest claim."); *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff."). "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). This probable cause inquiry requires the Court look to "the totality of the circumstances," *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010), and assess what the officer objectively knew at the time of arrest, "considering those facts available to the officer at the time of the arrest and immediately before it," *Scott v. City of New York*, No. 19 Civ.

6289 (JPO), 2022 WL 846929, at *2 (S.D.N.Y. Mar. 22, 2022) (citation modified); *see also Celestin v. City of New York*, 581 F. Supp. 2d 420, 430 (E.D.N.Y. 2008) ("Probable cause to arrest depends on the totality of the circumstances and is an objective rather than subjective inquiry as to the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest." (citation modified)). "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (citation modified).

In addition, "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "The right to be free from arrest without probable cause was a clearly established right at the time of [Plaintiff]'s arrest[]." *Delgado v. City of New York*, No. 19 Civ. 6320 (JPC), 2021 WL 2473817, at *8 (S.D.N.Y. June 17, 2021). When a right is clearly established, the question is "whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). In the context of false arrest, an officer's probable cause determination is "objectively reasonable" if there was "'arguable' probable cause at the time of the arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* at 157 (quoting *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)).

Plaintiff's false arrest claim fails because the Officer Defendants had probable cause to arrest him, or at a minimum, arguable probable cause, entitling them to qualified immunity. In New York, a person is guilty of criminal obstruction of breathing when they "appl[y] pressure on the throat or neck of [another] person." N.Y. Penal L. § 121.11(a). Atkinson told each of Sergeant

10

Roth and Officer Vucetovik in two separate recorded conversations that Plaintiff placed his hands around her neck. *See* Roth BWC at 21:33:12-21:35:42; Vucetovik BWC at 21:29:13-21:29:16. She also demonstrated on herself for both Officer Defendants how Plaintiff did so. *See* Roth BWC at 21:34:25-21:34:28; Vucetovik BWC at 21:29:14-21:29:16. While Atkinson acknowledged that Plaintiff "never really squeezed" her neck or caused her to become dizzy or lose consciousness, Roth BWC at 21:35:32-21:35:33, 21:35:49-21:35:52, and while she did not have any visible marks on her neck, *id.* at 21:35:45-21:35:48, such a level of aggression or injury is not needed to constitute "pressure on the throat or neck," N.Y. Penal L. § 121.11(a). The Officers Defendants discussed what Plaintiff and Atkinson each told them, *see* Roth BWC at 21:31:40-21:32:34, decided to credit Atkinson's version, *id.* at 21:41:15-21:41:18 (Sergeant Roth); *id.* at 21:32:07-21:32:19 (Officer Vucetovik), and arrested Plaintiff for criminal obstruction of breathing.

Based on the information provided to the Officer Defendants from a putative victim-witness shortly after the incident, and that witness's consistent account the two times she recounted what happened, the Court concludes that the Officer Defendants had probable cause to arrest Plaintiff. Moreover, the Officer Defendants certainly had, at a minimum, arguable probable cause to arrest Plaintiff, thus entitling them to qualified immunity. In his Objections, Plaintiff points to evidence from his criminal trial that contradicts Atkinson's account. *See* Objections at 2. But neither that evidence nor Plaintiff's acquittal implicates whether the Officer Defendants had probable cause to arrest him on May 4, 2021. *Cf. Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("Before making an arrest, if the arresting officer has probable cause, he need not also believe with certainty that the arrestee will be successfully prosecuted." (citation modified)). Plaintiff also contends that the officers should have believed him over Atkinson. *See* Objections at 2 (arguing that Sergeant Roth and other officers "expressed their view that the allege[d] story

of . . . Atkinson . . . 'doesn't make sense'"). But this does not defeat summary judgment either. After speaking separately with both Plaintiff and Atkinson, the Officer Defendants assessed Atkinson's version of the incident as more credible. Moreover, arresting officers are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," nor do they need to "prove plaintiff's version [of events] wrong before arresting him." *Curley*, 268 F.3d at 70 (citation modified). "[W]hen the totality of evidence . . . establishes probable cause . . .[,] some exculpatory evidence does not make an arrest illegal." *Stansbury v. Wertman*, 721 F.3d 84, 94 (2d Cir. 2013).

Because there is no genuine dispute of material fact bearing on the Officer Defendants' actual or arguable probable cause for arresting Plaintiff, the Court adopts Judge Wang's recommendation to grant summary judgment in Defendants' favor on Plaintiff's false arrest claim and to deny Plaintiff's motion on that claim.

**B.      The Deliberate Indifference Claim**

Judge Wang also recommended granting summary judgment in favor of Defendants as to Plaintiff's deliberate indifference claim because the undisputed facts show that Plaintiff's injury was not severe and the Officer Defendants were attentive to his injury, including by repeatedly offering to take him to the hospital. R&R at 15-17. In his Objections, Plaintiff points to the severity of his "defensive second degree burn." Objections at 3. The Court overrules his objection, grants summary judgment in favor of Defendants on the deliberate indifference claim, and denies Plaintiff's motion on that claim.

Constitutional protections as to the confinement conditions of pretrial detainees are grounded in the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). "To establish a claim for deliberate indifference to medical needs

12

under the Due Process Clause of the Fourteenth Amendment," a plaintiff "must establish two elements: (1) that the deprivation of medical care . . . was sufficiently serious, and (2) that the defendant acted or failed to act with a sufficiently culpable state of mind." *Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 395 (S.D.N.Y. 2020) (citation modified). The first element assesses whether "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process," while the second element, "a '*mens rea* prong' or 'mental element prong,'" assesses whether "the officer acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. An objectively serious deprivation "pose[s] an unreasonable risk of serious damage to [the plaintiff's] health," evaluated "in light of contemporary standards of decency." *Id.* at 30 (citation modified); *see Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019) ("The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain."). "Claims of lasting physical injuries is evidence of a serious medical condition." *Hong v. Aigle*, No. 18 Civ. 8110 (VSB), 2020 WL 2836309, at *3 (S.D.N.Y. June 1, 2020) (citation modified); *see Charles*, 925 F.3d at 86 (explaining that "[i]n most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether" the plaintiff was subjected to "a significant risk of serious harm").

It is undisputed that, in speaking with the Officer Defendants, Carr, and others at the scene, Plaintiff downplayed the severity of the burns to his arm and repeatedly declined offers to be taken to the hospital. Though Plaintiff requested treatment and was evaluated by a medic, Defts. 56.1 Stmt. ¶ 3; Pl. 56.1 Stmt. ¶ 8, he insisted on receiving only "ointment" for his burns, *see* Defts. 56.1 Stmt. ¶¶ 4-8; Forcier Decl., Exh. D ("Maxwell Dep. Tr.") at 42:12-18, and at least twice turned down offers to be taken to the hospital even though the on-scene medics could not provide the

ointment he was requesting, *see, e.g.*, Vucetovik BWC at 21:38:10-21:38:17, 21:38:29-21:38:32. Not only did Plaintiff say his arm "ain't bad," Roth BWC at 21:29:49-21:29:50, his arm was healthy enough to allow him to do approximately ten pull-ups shortly after the injury, *see id.* at 21:32:20-21:32:34.   And after Sergeant Roth asked Plaintiff how his arm felt after he was handcuffed, Plaintiff responded only that "it stings" and still did not ask to go to the hospital.  *Id.* at 21:41:40-21:41:41.   Plaintiff also fails to show any evidence of lasting injuries other than a single, unauthenticated photo purportedly of his arm, *see* Maxwell Decl., Exh. B, and a conclusory assertion that he suffered an "obvious second-degree burn," Pl. 56.1 Stmt. ¶ 8; *see* Objections at 3, yet he evidently never sought medical treatment for that burn after his release from jail, *see* Maxwell Dep. Tr. at 62:17-19.  *See Charles*, 925 F.3d at 86; *Hong*, 2020 WL 2836309, at *3.

Plaintiff also has not presented evidence showing that the Officer Defendants and Carr failed to act with reasonable care.  On the contrary, the repeated offers to take Plaintiff to the hospital indicate that Plaintiff received multiple opportunities to seek more treatment than the FDNY medics could provide him on site.  *See Darnell*, 849 F.3d at 35 (explaining that to establish a claim for deliberate indifference, a plaintiff "must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety").

Thus, no reasonable juror could find that Defendants were deliberately indifferent to Plaintiff's burn injury.  Accordingly, the Court adopts Judge Wang's recommendation to grant summary judgment in Defendants' favor on the deliberate indifference claim and to deny Plaintiff's motion on that claim.

## C.    The Malicious Prosecution Claim

Lastly, Judge Wang recommended granting summary judgment in Defendants' favor as to the malicious prosecution claim because no reasonable juror could find that the Officer Defendants initiated the criminal charges against Plaintiff, that they either lacked probable cause to arrest Plaintiff or that the probable cause "dissipated" between arrest and prosecution, and that the criminal proceedings were motivated by malice.  R&R at 17-20 (quoting *Barua v. City of New York*, No. 14 Civ. 584 (NRB), 2016 WL 7494875, at *10 (S.D.N.Y. Dec. 29, 2016)).  The Court overrules Plaintiff's objection, grants summary judgment in Defendants' favor on the malicious prosecution claim, and denies Plaintiff's motion on that claim.

The elements of a malicious prosecution claim under Section 1983 are:

(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding, (4) actual malice, and (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.

*Carruthers v. Colton*, 153 F.4th 169, 181 (2d Cir. 2025) (citation modified).

Probable cause is a complete defense to a malicious prosecution claim.  *Id.*  In that context, probable cause "has been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty."  *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003).  Unlike a false arrest claim, which "fails if there was probable cause to arrest the plaintiff for *any* offense, in the malicious prosecution context, there must be probable cause for the offenses *charged*."  *Tompkins v. City of New York*, 50 F. Supp. 3d 426, 435 (S.D.N.Y. 2014) (citation modified); *see Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 562, 564 (2024) (holding that "courts should evaluate [malicious prosecution claims] charge by charge," as "[o]ne bad charge, even if joined with good ones, [i]s enough to satisfy the malicious-prosecution tort's

15

'without probable cause' element"). Moreover, while "probable cause in the malicious prosecution context requires the police officer or prosecutor to believe that a criminal defendant 'could be successfully prosecuted,' . . . it is not necessary for the officer to be certain that the prosecution will be successful." *Williams v. City of New York*, No. 10 Civ. 9594 (CM), 2012 WL 547508, at *6 (S.D.N.Y. Feb. 17, 2012).

As discussed above, *see supra* III.A, the undisputed facts reveal that the Officer Defendants had probable cause to arrest Plaintiff for criminal obstruction of breathing.[4]  Plaintiff argues that even if there had been probable cause upon his arrest, "evidence surfaced" later that "eliminate[d]" it.  Objections at 4.  But the pieces of evidence he cites—a photograph showing Atkinson's neck, Pl. Opp. to Defts. SJ Motion, Exh. A, and a medical record of Atkinson's that was read to the jury during the Criminal Action, Pl. Opp. to Defts. SJ Motion, Exh. G—fail to indicate that the probable cause "dissipated" as a result of "the discovery of some intervening fact." *Barua*, 2016 WL 7494875, at *10 (citation modified); *see* Objections at 4.  While that evidence might have undermined the prosecution's argument at trial, "acquittal after trial establishe[s] the absence of proof beyond a reasonable doubt, not the absence of probable cause." *Saunders v. Cavada*, No. 19 Civ. 3279 (RPK) (JAM), 2024 WL 681228, at *8 (E.D.N.Y. Feb. 20, 2024) (citation modified), *report and recommendation adopted by*, 750 F. Supp. 3d 1 (E.D.N.Y. 2024).  As "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York," *Savino*, 331 F.3d at 72, the analysis could stop here.

Nevertheless, no reasonable juror could find in Plaintiff's favor on his malicious prosecution claim on two other, independent grounds.  First, no evidence has been presented

---

[4] Plaintiff was also charged with assault in the third degree and harassment in the second degree, *see* Criminal Complaint at 1, but he does not argue that probable cause was lacking to prosecute him for those crimes.  *See* Objections at 3-4.

suggesting that either Officer Defendant, or Carr for that matter, initiated the prosecution, notwithstanding Plaintiff's contention that "the charges . . . were based on Officer Vucetovik['s] report and statements given to the prosecution." Objections at 4. "There is a presumption that police officers do not initiate criminal proceedings because prosecutors use their independent judgment in making such decisions." *Saunders-Hall v. Sullivan*, No. 17 Civ. 1269 (PAC), 2018 WL 3038492, at *4 (S.D.N.Y. June 19, 2018). Plaintiff cites *Fiedler v. Incandela* for the proposition that "[a] police officer initiates criminal proceedings for purposes of a malicious prosecution claim by having the plaintiff arraigned, filling out complaining or corroborating affidavits, or signing a felony complaint." Objections at 4 (citing *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 162 (E.D.N.Y. 2016)). Yet he offers no evidence that any Defendant did that here. On the contrary, Sergeant Roth told Atkinson that she should talk to the District Attorney's office if she wanted the charges against Plaintiff dropped, Roth BWC at 21:38:45-21:38:51, and Atkinson, not any Defendant, signed the Criminal Complaint, *see* Defts. 56.1 Stmt. ¶ 16; Criminal Complaint at 2. Plaintiff thus has not provided any evidence permitting a reasonable juror to overcome the presumption that police officers did not initiate his prosecution.

Plaintiff also fails to put forward any evidence indicating malice. There is no evidence that the Officer Defendants or Carr had any personal animus toward Plaintiff or that they were motivated by "something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (citation modified). Indeed, Plaintiff does not present any evidence indicating actual malice on the part of *anyone* involved in the Criminal Action. Though he asserts in his Objections that he faced "a prosecution not [based] on evidence and facts but on Plaintiff['s] conviction from 20 years ago," Objections at 4, he does not point to evidence supporting that accusation. His Objections cite only Exhibit D of Docket Number 54,

17

but that is an audio recording of the 911 call he placed on May 4, 2021, with no connection to the two-decade-old conviction. *See generally* 911 Call Recording.[5]

Accordingly, the Court adopts Judge Wang's recommendation to grant summary judgment in Defendants' favor as to the malicious prosecution claim and to deny Plaintiff's motion on that claim.

## IV.  Conclusion

The Court adopts the Report and Recommendation in full.[6]  Defendants' motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

---

[5] Given his *pro se* status, the Court reviewed other aspects of the record for evidence tending to support Plaintiff's assertion about his prior conviction, and found nothing.  Plaintiff might have intended to cite Exhibit D of Docket Number 58, which is a transcript excerpt from his trial reflecting that his attorney objected to the prosecution's cross-examination of Plaintiff about aliases he had used in the past.  Pl. Opp. to Defts. SJ Motion, Exh. D at 21:13-24:8.  After permitting the questioning, the trial court informed the parties that it thought, in retrospect, that the prosecution should have given notice to the defense that it planned to ask about those aliases. Pl. Opp. to Defts. SJ Motion, Exh. E at 85:9-13.  The trial court offered to cure the error with an instruction, but the defense declined.  *Id.* at 86:12-87:19.  Even construing Plaintiff's filings to raise the strongest argument they suggest, *see Machicote*, 2011 WL 3809920, at *2, that evidentiary dispute at trial falls far short of showing actual malice on the part of anyone involved in the Criminal Action, let alone any Defendant.

[6] Plaintiff also names the City of New York as a Defendant in his Amended Complaint, Am. Compl. at 4, but articulates no argument for the City's liability, *see generally id.*; Pl. Opp. to Defts. SJ Motion.  In any event, Plaintiff plainly has not presented a basis for *Monell* liability against the City.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). "To hold a municipality liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (citation modified).  Thus, without "[a]n underlying constitutional violation," a municipality cannot be held liable under Section 1983.  *Nardoni v. City of New York*, 331 F. Supp. 3d 116, 125 (S.D.N.Y. 2018).  As discussed above, the undisputed evidence establishes that Plaintiff did not suffer a violation of his constitutional rights by the Officer Defendants or Carr, so *Monell* liability cannot exist based on their conduct.  Thus, any claims against the City also must be dismissed.

The Clerk of Court is respectfully directed to enter judgment in Defendants' favor and to terminate the case.

SO ORDERED.

Dated: March 30, 2026
New York, New York

_____
JOHN P. CRONAN
United States District Judge